**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1081
_____

YUYAN ZHOU; ZHANGYI PAN,
                                        Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A99 687 192 and A99 687 193)
Immigration Judge:  Honorable Frederick Leeds

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 26, 2011
Before:  <u>Chief</u> <u>Judge</u> MCKEE, SMITH and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: February 8, 2011)
_____

OPINION
_____

PER CURIAM

Petitioners Yuyan Zhou and her husband Zhangyi Pan, natives and citizens of

China, petition for review of a decision of the  Board of Immigration Appeals ("BIA")

1

dismissing their appeal from an Immigration Judge's ("IJ") decision denying their applications for relief from removal. We will deny the petition for review.

Zhou and Pan came to the United States in 2001. In 2006, notices to appear were issued charging that they were subject to removal from the United States because they were present without having been admitted or paroled. Through counsel, Zhou and Pan conceded that they are removable as charged. Zhou applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") with Pan as her derivative beneficiary. Zhou, who is from Zhejiang Province, China, claimed that, based on the birth of her two sons in the United States, she will be forcibly sterilized and fined if removed.

Zhou testified that if she and Pan are removed, they would take their children with them to China and register them in a household registration so that they would be able to attend school. Zhou stated that Pan has a daughter in China from another relationship who also would live with them. Zhou believed that she would be fined for having more than the permissible number of children. She explained that under the applicable family planning policy she was not allowed to have a second child because her first child was a boy.

Zhou further testified that the fines imposed for excessive births vary based on a family's wealth and that people who returned from abroad received greater fines. Zhou stated that she and Pan would be fined approximately $10,000. Although Zhou's father, a

farmer, paid approximately $30,000 to have Zhou smuggled into the United States, Zhou stated he would not pay a fine imposed for excessive births because she was now married with her own family. Zhou has repaid her father more than $20,000 of the money he paid to have her smuggled into the country. Zhou was not working at the time of the hearing. Pan was supporting the family by working in a restaurant while Zhou was taking care of their sons.

Zhou also testified that she will be forcibly sterilized if she returns to China due to her violation of family planning policies. Zhou explained that, while she was pregnant with her second child, she could not take care of her first child and she sent him to China to live with family. Zhou stated that her son's travel documents identify him as Chinese. Zhou apparently believes that, as a result, she will be targeted for sterilization. Zhou also stated that a friend of hers in China was sterilized after she had a second child. Zhou, however, does not know anyone who has returned to China with United States citizen children who has been sterilized. Pan also testified briefly and stated that he and his family could live with his parents if he and Zhou are removed to China. Pan further stated that he paid a smuggler approximately $60,000 to help him enter the United States.

The IJ determined that Zhou and Pan are not eligible for relief from removal, emphasizing that there was no evidence that anyone who returned to China with United States citizen children has been sterilized. On appeal, the BIA affirmed the IJ's

3

determination that Zhou had not established eligibility for asylum. The BIA explained that a Chinese citizen who has given birth to United States citizen children may qualify as a refugee if the alien shows that the births violated family planning policies in the alien's local province and that current local family planning enforcement efforts give rise to a well-founded fear of persecution. The BIA rejected Zhou's argument that her background evidence established pervasive forced sterilizations in Zhejiang Province. The BIA noted that some of the general evidence Zhou submitted was the same as or cumulative of documents analyzed in recent BIA decisions rejecting similar claims, that some of the submitted materials relate to provinces other than Zhejiang Province, and that the congressional testimonies and investigative articles submitted do not address recent conditions in Zhejiang Province. The BIA noted that a May 2007 news article reported that violators of the family planning policy in Zhejiang Province face fines, not forced sterilization.

Although the BIA recognized that fines and incentives are commonly used to achieve compliance with family planning policies, the BIA found insufficient evidence to assess a claim of economic persecution in Zhou's case. The BIA noted that Zhou had testified that she would be fined the equivalent of $10,000, but that she did not provide supporting evidence and that a fine schedule she had submitted did not indicate the applicable locality. The BIA also noted that a news article and village committee statement from Zhejiang Province states that a fine shall be four times the local average

4

annual income, but found that Zhou did not submit evidence of the average annual income for her area. The BIA also found the couple's testimony about their income and financial circumstances insufficient to show their inability to pay a fine. The BIA noted that Zhou and Pan, with the help of their families, were able to pay off debts to their smugglers, which were greater than $10,000.

The BIA further found Zhou's individualized evidence insufficient to show that she has reason to fear persecution. Zhou asserted in her affidavit that her sister-in-law was sterilized in 1985, that her sister was forced to have an abortion in 1991, and that her parents had told her that two women from her village were forcibly sterilized in 2005 and 2006. The BIA stated that the incidents involving her sister and sister-in-law were too long ago to establish how policies are enforced today and that the other women did not provide statements. A friend of Zhou's did submit an affidavit stating that she was sterilized in 2007, but the BIA found that the affidavit lacked sufficient detail about her experience.

Zhou's home village committee also provided a statement that Zhou would be required to undergo sterilization. The BIA noted that the statement is a photocopy and stated that Zhou had not shown that the committee had the authority to make family planning decisions. Zhou also provided evidence that an individual was forcibly sterilized after returning to China with children born in Japan. The BIA noted, among

5

other things, that the individual lived in Fujian Province, not Zhejiang Province. Thus, the BIA gave these documents little weight.

In addition to concluding that Zhou did not meet her burden of proof for asylum and withholding of removal, the BIA agreed with the IJ that Zhou did not show that she is eligible for relief under the CAT. The BIA stated Zhou had not shown that it is more likely than not that she will be tortured upon return to China based on the births of her two children and Pan's daughter. This petition for review followed.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Because the BIA issued its own opinion, we review the decision of the BIA, not the IJ. Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). We review the BIA's findings under the substantial evidence standard of review, under which we will reverse based on factual error "only if any reasonable fact-finder would be 'compelled to conclude otherwise.'" Id. (citing 8 U.S.C. § 1252(b)(4)(B)). We review the BIA's legal conclusions de novo and accord deference as required under Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Id.

Zhou and Pan argue that the BIA erred by reviewing their evidence de novo. They contend that the BIA improperly discounted the village committee notice for reasons other than those given by the IJ and erred in assessing the evidence of forced sterilizations. We recently held that the BIA's review of whether the facts of a case support a well-founded fear of persecution is de novo. Huang, 620 F.3d at 386-87. We

6

explained that, while disputed factual questions are reviewed for clear error, once the IJ resolves factual disputes, assessing how a reasonable person would respond to those facts is a question of law subject to de novo review. Id. at 387. Here, consistent with Huang, the BIA stated that it applied de novo review in assessing the IJ's determination that Zhou had not established eligibility for asylum because her fear of future persecution was not objectively reasonable. Although Zhou faults the BIA for providing reasons beyond those provided by the IJ, the BIA did not determine a disputed factual question de novo but further addressed the legal question of whether Zhou's fear was well-founded based on the evidence. See id.

Zhou and Pan also argue that the BIA erred in giving little weight to evidence showing that forced abortions and sterilizations have occurred in their hometown. As noted above, Zhou attested in her affidavit that her parents had told her that two women from her town were forcibly sterilized in 2005 and 2006. In addition, Zhou's friend submitted a letter stating that she was forcibly sterilized in 2007. The BIA recognized this evidence but noted that Zhou did not submit statements from the two women mentioned in her affidavit and stated that her friend's letter lacked detail. Zhou has not shown that a reasonable person would be compelled to conclude from this evidence that she has a well-founded fear of persecution. Zhou did not provide detailed information about the women mentioned in her affidavit nor does she explain how the incident involving her friend supports her claim.

Zhou and Pan further contend that the BIA erred in discounting the village committee statement because it is a photocopy and because the evidence does not reflect that a village committee has the authority to make family planning decisions. There is some general evidence in the record providing that enforcement of population control policies is carried out by village authorities. See A.R. at 212. However, even if this evidence was sufficient to show how enforcement in Zhou's village is carried out, the statement reflects that the village committee informed Zhou that citizens with two children must undergo sterilization procedures and that she must comply with the family planning policy when she returns to China. Other than noting that social compensation fees will be levied, the village committee did not state any other consequence for failure to comply with the policy.

Zhou and Pan also argue that the BIA erred in discounting evidence reflecting that a person who had children in Japan was forcibly sterilized when he returned to China. The BIA explained that it afforded this evidence little weight because, among other things, the individual is from Fujian Province. The record reflects that the individual is from Fujian Province, not Zhejiang Province. Because enforcement of family planning policies varies based on locality, we find no error in the BIA's decision to give this evidence little weight.[1]

_____

1.    [1]Although Zhou and Pan argue that one court of appeals has remanded a case to the BIA to consider evidence about these individuals, in that case, unlike here, the BIA had not discussed the evidence in its decision. See Zheng v. Holder, 361 F. App'x 184, 187-88 (2d Cir. 2010) (unpublished decision). Moreover, the alien in

8

Zhou and Pan further contend that the BIA erred in concluding that they failed to establish a well-founded fear of economic persecution and sterilization. As discussed above, the BIA gave several reasons for concluding that Zhou and Pan had not established a well-founded fear of economic persecution and addressed in detail the evidence purporting to support a fear of sterilization. The BIA's decision is supported by the administrative record and Zhou and Pan have not shown that the record compels a contrary conclusion.[2] Similarly, the record does not compel the conclusion that it is more likely than not that Zhou will be tortured if removed to China.

Accordingly, we will deny the petition for review.

---

Zheng was from Fujian Province.

[2] The BIA noted that a fine schedule submitted by Zhou did not identify the applicable locality. The translator's certificate, however, reflects that the fine schedule is for Fujian Province. A.R. at 347-48.